## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STACY M. OWENS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 06-CV-24-GKF-PJC |
| PRUDENTIAL INSURANCE COMPANY OF ) | |
| AMERICA, a New Jersey corporation, and ) | |
| THE GEA RAINEY/MG NORTH AMERICA ) | |
| HOLDINGS INC. LONG TERM DISABILITY ) | |
| PLAN, ) | |
| ) | |
| Defendants. ) | |

### OPINION AND ORDER

Plaintiff brings this suit under the Employee Retirement Income Security Act, 29 U.S.C. §1001, *et seq.* ("ERISA"), seeking judicial review of the decision to deny her long term total disability benefits under the group disability insurance plan provided by her former employer, defendant GEA Rainey/MG North American Holdings Inc. ("GEA"). Plaintiff has filed a motion for summary judgment [Doc. No. 21] seeking a determination that defendants' decision to terminate her long term disability benefits was arbitrary and capricious and seeking an award of benefits to her.[1] For the reasons set forth below, plaintiff's motion is denied and the determination of the plan administrator is hereby affirmed.

### I. Background

Plaintiff is a former employee of GEA and a participant in GEA's self-funded Long Term Disability Plan ("Plan"). Defendant Prudential Insurance Company of America ("Prudential")

---

[1] The administrative record initially submitted by defendants [Doc. No. 20] was missing pp. 201-225. Defendants filed a supplement to the administrative record on February 2, 2009. [Doc. No. 29]

issued Group Policy G-42033 to GEA to provide disability benefits to qualified GEA employees. Prudential is also the Plan administrator.  Owens began working for GEA as an Engineer Detail Draftsman in about 2000.  In November of 2003, she ceased working to have an anterior cervical discectomy surgery.  She returned to work in January of 2004.  She left work again the following month and applied for Long Term Disability ("LTD") benefits.  Prudential granted the application in March 2004.  Subsequent medical analysis showed that movement between her C5 and C7 vertebrae caused the pain, and a cervical fusion surgery was performed to correct the movement in October 2004.  Followup visits with her doctor revealed that her fusion was healing.  Based on the maximum normal recovery period for the cervical fusion and medical records presented, Prudential determined that Owens was not disabled on March 23, 2005, effective April 1, 2005. Owens appealed Prudential's denial of further LTD benefits twice, and Prudential upheld its decision both times.  After the second appeal was denied, Owens filed this action.

## II.  Prudential's Long Term Disability Policy

Prudential's Long Term Disability policy covers all full-time employees of GEA Rainey.  PRU 542.  An employee is defined as a "person who is in active employment with the Employer for the minimum hours requirement."  PRU 528.  "Active employment means you are working for your Employer for earnings that are paid regularly and that you are performing the material and substantial duties of your regular occupation.  You must be working at least 30 hours per week." PRU 529.  Coverage under the policy ends if an employee is no longer in active employment unless the employee is disabled under the terms of the plan.  PRU 530.

Prudential's disability plan provides that a person is disabled when Prudential determines that: "You are unable to perform the *material and substantial duties* of your *regular occupation*

due to your *sickness* or *injury*." PRU 533. "Material and substantial duties" are defined as duties that:

- are normally required for the performance of your regular occupation; and
- cannot be reasonably omitted or modified...

*Id.*

The plan also states:

> *Regular occupation* means the occupation you are routinely performing when your disability begins. Prudential will look at your occupation at it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.

*Id.*

### III. Plaintiff's Health and Disability Claims History

On November 11, 2003, plaintiff underwent an anterior cervical discectomy to correct cervical spondylosis and foraminal narrowing at C5-6 and C6-7. The surgery was performed by Dr. R. Clio Robertson. PRU 127-33. Prudential approved short term disability benefit payments on November 14, 2003. PRU 498-99. Plaintiff was released to return to work on January 12, 2004, PRU 407-08, but ceased working again on February 6, 2004. PRU 54, 67. Plaintiff applied for LTD benefits and was approved by Prudential on March 3, 2004, effective from March 5, 2004. PRU 492-93.

In March of 2004, plaintiff saw Dr. James A. Rodgers, a neurologist. He noted there was movement between her C5 and C7 and prescribed a bone growth stimulator to correct the movement. PRU 392-93, 598, 600. After five months on the bone growth stimulator, Dr. Robertson performed a posterior cervical fusion surgery on October 27, 2004. PRU 062-64. In a post-surgical follow-up visit on January 31, 2005, Dr. Robertson suggested continued physical

therapy for pain. PRU 067. He noted the cervical fusion had healed. *Id.* On March 9, 2005, plaintiff visited Dr. Robertson again. PRU 068. Plaintiff reported continued pain, which the doctor believed was due to increased stretch of the facet capsules of the levels above the fusion and to a lesser degree below the fusion. *Id.* The doctor stated, "At this stage I have nothing further to offer other than continuing her rehabilitation." *Id.* He recommended continued rehabilitation at home and stated: "Because she has aggravation of her pain with working at a computer and because this is the type of activity required in her job, she does not feel she could work the hours and schedule which would be required of her job." *Id.*

On March 23, 2005, Prudential determined that plaintiff was not disabled, and therefore was no longer eligible to receive LTD benefits effective April 1, 2005. PRU 479-481. The letter terminating benefits stated:

> Although the office visit notes states (*sic.*) that you feel you cannot return to work, there is no medical information in file to support a continued impairment. The x-rays show that your fusion is healed and there is no evidence to support your continued complaints of pain. You have not been prescribed any pain medication or any further physical therapy.

*Id.* 480.

On March 28, 2005, plaintiff appealed the denial of LTD benefits. PRU 238-39. Prudential requested that Reed Review Service arrange for a physician specializing in pain management and rehabilitation to examine plaintiff's medical file. PRU 226-231. Dr. Phillip Marion reviewed plaintiff's medical records, discussed the case with plaintiff's pain management specialist**,** Dr. Stephen Lester, and, in responding to questions propounded by the administrator, concluded that plaintiff's limitation were not based on self-reported symptoms/pain complaints only, because after cervical spine fusion surgeries there is an expected decreased range of motion.

4

PRU 230.  However, he opined that "[h]er complaints of pain are out of proportion to the documented well-healed cervical spine C5-7 discectomy and fusion." *Id.*  Further, in response to the question, "Is there an indication of symptom magnification?  Somatic complaints?" Dr. Marion stated: "The complaints of pain are out of proportion compared to the lack of cervical pathology via cervical MRI scan." PRU 227, 230.  In his assessment, Dr. Marion concluded:

> Based on the enclosed clinical information, there is no objective impairment that would preclude the patient from working a sedentary to light duty job with the ability to change positions as necessary and limiting lifting to a maximum of 20 pounds occasionally.  Dr. Lester agreed that the patient is functionally capable of performing her regular job; however, he felt her complaints of pain would limit her from returning to work.

PRU 230.

On May 3, 2005, Prudential notified plaintiff it had upheld the March 23, 2005, decision terminating LTD benefits.  PRU 472-74.  On October 6, 2005, plaintiff appealed the decision a second time, and submitted additional medical records and a Residual Functional Capacity to Do Work Related Activities evaluation from Dr. Lester.  PRU 27, 7-10.  Prudential asked Nancy Scott, RN, to review plaintiff's medical records to determine whether plaintiff had a functional impairment from March 2005 forward and, if so, to list the impairments and cite supporting evidence.  PRU 445-449.  She was also asked to identify the appropriate restrictions or impairments based on functional impairments and the duration of such restrictions.  *Id.*  She was directed that if she determined plaintiff was not functionally impaired to the extent plaintiff's providers were indicating, she should provide a detailed explanation supporting her opinion.  *Id.*  Ms. Scott reviewed the medical records, including records of treatment after the March 23, 2005, termination of LTD benefits.  *Id.*

Under the heading "Subjective," Ms. Scott noted that in a February 1, 2005, report of function to the Social Security Administrator:

> EE is able to tidy up the house, drive kids to school, go to PT, run errands, rest, pick up kids, do laundry with kids help, unload or reload dishwasher, rest, simple dinner preparation, self shower and care. Does light housekeeping and simple food preparation requiring no more than 30 min. Needs to rest her arms before she can finish washing or drying her hair. Can use computer for about 1 hour or less because of pain. Watches TV, listens to radio, and talks on the phone. Meets others for lunch once q (*sic.*) 6 weeks. Can't reach up or out more than 1 min. at a time. Can't sit for more than 1 hour. Can walk 1 mile.

*Id.* at 445. Ms. Scott's clinical review recounted at length plaintiff's medical history. She stated:

> There is no objective medical evidence to support impairment due to ee's conditions of HTN, depression, GERD, IBS, mole of L labia and migraine.
>
> Ee is not 1 year S/P last cervical fusion, however, persists with c/o neck pain to R shoulder and lateral brachium (upper arm) but not distal to elbow with similar radiation to left. She has constant tingling of the fingers of her R hand involving the thumb, index, ring and small fingers which is a subjective complaint. There is no tingling in her left hand. The C4-5 and C6-7 fusion is healed and is stable per X-rays of 1/31/05 and 6/13/05, MRI of 8/29/05, Cervical myelogram/CT scan of 9/12/05, and 3 level CT discogram of 9/14/05. Although these tests revealed a small disc bulge at C7-T1 as well as C2-3, there did not appear to be a neural impingement, a nerve root encroachment of consequence, a herniated disc, a substantial narrowing of the lateral recesses, central canal or foramen that would substantiate ee's pain symptoms with radiation into her arms. Her discography was most notable for primary discogenic pain at C3-4 which is also subjective. EMG of 3/13/04 demonstrated CTS of mild degree R>L abut found no evidence of cervical radiculopathy or any entrapment syndrome to support arm pain and finger numbness. Repeat fusion was done for instability and not for radiculopathy. Objective evidence does not support a continued impairment. Cervical fusion would cause a permanent impairment from heavy lifting, overhead lifting, and

> constant flexion or extension type activities.

*Id.* at 448. Ms. Scott's report concluded:

> Based on review of the available medical records and given the 2 surgeries for cervical fusion, ee's chronic pain syndrome, and subjective c/o tingling of the fingers of her dominant R hand, it is reasonable to conclude that as of file review of 4/29/05 with concurrence of the treating AP (Dr. Lester, PM) for [return to work], ee may be capable of sustained sitting activity with ability to change position as needed, constant standing and walking; lifting/carrying up to 10 lbs frequently and up to 20 lbs occasionally; occasional bending, squatting; no crawling, kneeling, climbing; occasional reach above and below 18 inches but none overhead; frequently grasping and fingering. Ee may need to avoid static flexion/extension of neck and should not work in unprotected heights or operate moving machinery since she has a history of numbness and tingling in her right hand. These are likely to be permanent [restrictions and limitations]. Discussed with Dr. Fallon who agrees with above.

*Id.* at 449.

In a SOAP note dated December 22, 2005, claim manager Francesca Ledeaux stated that although plaintiff's orthopedist had opined plaintiff was disabled because she could not gaze downward at a computer screen, plaintiff's job would require frequent standing or walking; therefore, she would not be required to gaze downward at a computer screen for extended periods. PRU 450. Ledeaux also stated: "If a seated or standing workstation is set properly it is unlikely that looking at a computer screen requires downward gazing. This [attending physician's] rationale for total disability is not consistent with EE's occupational duties; therefore is not valid." *Id.*

On December 22, 2005, Prudential once again upheld the March 23, 2005, LTD determination. PRU 465-67. In summarizing its decision, the administrator stated:

> The Functional Capacities Evaluation performed on October 24, 2005 is not complete, it does not contain validity indicators, and we were

>unable to identify the physician that completed it. Additionally, this does not clarify her level of function as of March 31, 2005, the date benefits were last paid. At this time, Ms. Owens was functionally capable of returning to work, as supported by her medical records, her own physicians and our reviewers. Therefore Ms. Owens failed to meet the Group Policy definition of disability at that time. As such we are upholding our previous determination to terminate her benefits for Long Term Disability beyond March 31, 2005.

*Id.* at 467.

### IV.  Procedural Posture

Since ERISA contains a provision for court review of a plan administrator's decision, but provides no structure for that review, it is a common practice for parties to present their positions by way of summary judgment motion, as the parties have done in this case. The Tenth Circuit generally reviews district court decisions made on these motions in ERISA cases without comment on the use of the summary judgment procedure. *See e.g., Finley v. Hewlett-Packard Company Employee Benefits Organization Income Protection Plan,* 379 F.3d 1168 (10th Cir. 2004). However, at least two district courts within the Tenth Circuit have determined that summary judgment is not the appropriate vehicle for evaluating a denial of ERISA benefits under the arbitrary and capricious standard of review. *Panther v. Synthes,* 380 F.Supp.2d 1198, 1207 n. 9 (D. Kan. 2005); *Clausen v. Standard Ins. Co.,* 961 F.Supp. 1446, 1455 (D. Colo. 1997).  These courts have said that the court's appropriate role is to act as an appellate court where the reasonableness of a plan administrator or fiduciary's decision is based on a review of the evidence contained in the record.   This view is in accord with the Tenth Circuit's decision in *Olenhouse v. Commodity Credit Corp.,* 42 F.3d 1560, 1580 (10th Cir. 1994), where the court held that a district court should proceed as an appellate court in reviewing the actions of an executive agency under

the arbitrary and capricious standard. The court stated that motions for summary judgment are conceptually incompatible with the very nature and purpose of an appeal.

Accordingly, the court in this case has conducted its review of the record functioning as an appellate court rather than applying the summary judgment procedure.

### V.  Standard of Review

Prudential, as administrator of the plan, had discretion under the plan to determine whether plaintiff qualified for continuing benefits. Therefore, the court's review is limited to determining if the decision was arbitrary or capricious. *Chambers v. Family Health Plan Corporation,* 100 F.3d 818, 825 (10th Cir. 1996), *Sandoval v. Aetna Life and Casualty Insurance Co.,* 967 F.2d 377, 380 (10th Cir. 1992). Under this standard, "[t]he Administrator['s] decision need not be the only logical one nor even the best one. It need only be sufficiently supported by facts within [his] knowledge to counter a claim that it was arbitrary or capricious." *Kimber v. Thiokol Corporation,* 196 F.3d 1092, 1098 (10th Cir. 1999), quoting *Woolsey v. Marion Laboratories, Inc.,* 934 F.2d 1452, 1460 (10th Cir. 1991). The decision will be upheld unless it is not grounded on *any* reasonable basis. *Id.* The reviewing court "need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness–even if on the low end." *Id.*

Where, as here, the claim administrator is also the insurer of the plan, the court should apply a "less deferential standard" of review. *Fought v. UNUM Life Ins. Co. Of America,* 379 F.3d 997, 1006 (10th Cir. 2004). Under this standard, the administrator "bears the burden of proving the reasonableness of its decision pursuant to the Tenth Circuit's traditional arbitrary and capricious standard." *Id.* The administrator must demonstrate that its interpretation of the terms of the plan is reasonable and its application of those terms to the claimant is supported by

substantial evidence.  *Id.*  "Substantial evidence" is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decision maker."  *Sandoval v. Aetna Life & Cas. Ins. Co.,* 967 F.2d 377, 382 (10th Cir. 1992).  Substantial evidence requires "more than a scintilla but less than a preponderance" of evidence.  *Id.*  This standard allows a "flex" of the traditional "arbitrary and capricious" standard to allow a reviewing court to adjust for the circumstances alleged, such as trustee bias in favor of a third-party or self-dealing by the trustee.  *Fought* at 1006.  Thus, the court considers defendant's conflict of interest as one factor in determining whether defendant's denial of disability benefits to plaintiff was arbitrary and capricious.  *Id.* at 1005.

## VI.  Analysis

Plaintiff challenges the reasonableness of the administrator's decision on the following bases: (A) failure to properly determine that plaintiff could return to her previous occupation; and (B) failure to properly provide plaintiff with a full and fair review of her claim.

### (A) Administrator's Determination That Plaintiff Could Return to Previous Occupation

Plaintiff argues that the administrator improperly analyzed the applicable job descriptions in determining she could return to her job as a draftsman.   She contends the administrator's decision was arbitrary and capricious because it is not supported by substantial evidence that plaintiff has the residual functional capacity to return to her occupation either as she performed it or as it is performed in the national economy.

The administrator, in reviewing plaintiff's claim, relied upon both GEA's  "Job Description" ("GEA description") and the job description for "Drafter, Heating and Ventilating" listed in the Dictionary of Occupational Titles ("DOT description").

10

The GEA description states:

> The physical demands described here are representative of those that must be met by an employee to successfully perform the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.
>
> While performing the duties of this job, the employee is regularly required to sit; use hands to finger, handle, or feel; and talk and hear. The employee is frequently required to reach with hands and arms. The employee is occasionally required to stand; walk; climb or balance; and stoop, kneel, crouch, or crawl. The employee must occasionally lift and/or move up to 50 pounds.

PRU 369.  The DOT description states:

> In performing this occupation's material and substantial duties a person would generally be required to exert force to lift/carry push/pull objects 10 pounds occasionally or negligible amount frequently. The individual may need to walk and or stand frequently throughout the work day, and to have frequent use of upper extremities for reaching, and constant use for handling, or fingering items.

PRU 438.   The administrator determined:

> Given her surgical history and findings, it would be reasonable that Ms. Owens would be capable of sustained sitting with the ability to change positions as needed for pain, continuous walking and standing, she should be able to lift up to 10 pounds frequently and up to 20 pounds occasionally; She can bend, squat, reach above and below 18 inches on an occasional basis. She should not crawl, kneel, climb or reach overhead. She is able to frequently grasp and finger. She should avoid static flexations or extension of the neck and should not work at unprotected heights. During our prior appeal review our reviewer spoke with Dr. Lester, Ms. Owens' own treating physician, who agreed that Ms. Owens was functionally capable of returning to work with the restrictions and limitations identified above. These restrictions and limitations are likely permanent in nature, however do not exceed the physical requirements of Ms. Owens' regular occupation.

PRU 466-67.

Plaintiff argues that she cannot perform the essential duties of her job regardless of which

job description is used. With respect to the GEA description, plaintiff asserts she cannot climb or crawl and cannot perform the lifting requirements of her occupational, according to the administrator's own determination of her functional capacity. With respect to the DOT job description, she contends she cannot constantly handle or finger items, or to do so more than two-thirds of the time because she is limited to only frequent grasping and fingering by the administrator's own definition of her abilities (citing Ex. A to brief).

Defendants argue that the GEA job description provides for the making of reasonable accommodations to enable disabled individuals to perform the essential functions. They assert that restrictions and limitations needed by plaintiff fall within the realm of reasonable accommodations.

Applying the standards for review set forth in applicable authority, it appears to the court that the administrator's decision in this respect was reasonable. An employer's written job description shall be considered evidence of the essential functions of the position. *Turner v. Hershey Chocolate USA,* 440 F.3d 604, 613 (10th Cir. 2006). Here, the employer's job description explicitly provided for reasonable accommodations to enable the employee to perform the essential functions. The administrator, adopting Ms. Scott's description of plaintiff's capabilities and restrictions, found that she was functionally capable of returning to work with the restrictions and limitations identified by Ms. Scott and adopted by the administrator. PRU 449, 466-67. Thus, the administrator's decision is supported by substantial evidence.

**(B) Administrator's Review of Plaintiff's Claim**

Plaintiff contends the administrator failed to provide her a full and fair review of her claim.

She argues this is evidenced by the administrator's letters of March 23, 2005, May 3, 2005, and December 22, 2005, which she contends misstate and mischaracterize the medical records and omit crucial information.[2] The gravamen of plaintiff's argument is that the administrator could not reasonably have concluded she was not disabled if it had properly reviewed and evaluated her medical records. Obviously, the issue of whether the administrator's decision is supported by substantial evidence is at the heart of these allegations. The court has extensively reviewed the letters, the medical records and reports by reviewers of the medical records. The administrator's letters do not cite in detail every record reviewed and do not quote verbatim every physician or reviewer's written notes or reports. However, there is substantial evidence in the record to support the administrator's conclusion that plaintiff was functionally capable of returning to work on March 31, 2005, and that she was not disabled within the terms of the LTD policy. Both Dr.

---

[2] The court has not attempted to catalog in this order all of the alleged deficiencies of the denial letters. However, by way of example, plaintiff complains that the May 3, 2005, letter incorrectly stated that Dr. Lester "'agreed that you are functionally capable of performing your regular job. However, he did indicate that you continue to have complaints of pain.' PRU 473" [Doc. No. 220, p. 8]. A review of the record shows that during plaintiff's first appeal of the administrator's decision terminating benefits, the reviewing physician, Dr. Marion, spoke with plaintiff's pain management specialist, Dr. Lester. Dr. Marion reported Dr. Lester had agreed plaintiff was functionally capable of performing her regular job; "however he felt her complaints of pain would limit her from returning to work." PRU 230. However, Dr. Marion's own opinion was that "There is no objective impairment that would preclude this patient from working a sedentary to light duty job." *Id.* Clearly, Dr. Marion and Dr. Lester agreed plaintiff was functionally capable of performing her job. Their opinions differed on whether plaintiff's pain would prevent her from returning to work. The administrator's characterization of the discussion between the doctors does not change the nature of the disagreement or the fact that Dr. Marion believed plaintiff could return to work. Plaintiff also complains that the denial letters failed to acknowledge her arthritis or its role in causing her pain, and that the administrator failed to review four pages of medical notes–PRU 70, 150, 154 and 158. [Doc. No. 22, pp. 1314] However, it is clear from the clinical review report of Ms. Scott that she reviewed these records, and indeed reviewed all correspondence, events, phone calls and medical records in the file. PRU 445.

13

Marion and RN Nancy Scott conducted thorough reviews and concluded plaintiff was capable of performing sedentary or light duty work with certain restrictions.

ERISA requires that benefit plans afford a reasonable opportunity for a full and fair review of dispositions adverse to the claimant. *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 830-31 (2003), citing 29 U.S.C. §1133(2). However, administrators are not required to accord special deference to the opinions of treating physicians. *Id.* at 811. The Supreme Court, in declining to adopt a treating physician rule similar to that required by the Social Security cases, stated:

> Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. But, we hold, courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.

*Id.* at 834.

Here, the Plan administrator rejected the opinion of Dr. Lester that plaintiff's pain would preclude her from performing her job and Dr. Robertson's opinion [PRU 70] that she was disabled because "gazing downward at the computer screen, markedly aggravates her symptoms." PRU 450, 467. The administrator instead accepted the opinions of Dr. Lester and Ms. Scott–both of which were based on review of the file, including the medical records–that plaintiff could perform her job subject to certain restrictions. PRU 467.

Plaintiff also challenges the administrator's position that the relevant date for determination of whether a disability existed was March 31, 2005. She argues this is arbitrary and capricious and renders the appeal/review period "meaningless." The court disagrees. First, under the terms of the

14

plan, if an employee is no longer in active employment, he or she is no longer covered under the plan unless they are disabled under the terms of the plan.  PRU 530.  Plaintiff stopped working on February 6, 2004 and never returned to work.  PRU 54, 67.  Because she was found "not disabled" as of March 31, 2005, she ceased to be covered under the plan on that date.  PRU 530.  Moreover, Dr. Marion and Ms. Scott, in conducting their reviews, took into consideration evidence submitted or gathered after March 31, 2005.  PRU 227-231, 445-449.  Similarly, the administrator clearly evaluated evidence supplied or generated after March 31, 2005.  PRU 472-74.

Citing *Gaither v. Aetna Life Insurance Company,* 394 F.3d 792 (10th Cir. 2004), plaintiff also asserts the administrator improperly denied benefits at the time of termination merely because no doctor had found her to be disabled, and the administrator had an affirmative duty to seek out more information. [Doc. No. 22, p. 13].  In *Gaither,* the court held that "fiduciaries cannot shut their eyes to readily available information when the evidence in the records suggest that the information might confirm the beneficiary's theory of entitlement and when they have little or no evidence in the record to refute that theory."  *Id.* at 807.  However, in this case, the administrator appears to have considered all evidence available to it at the time of the initial decision and all evidence provided or received in the appeals.  The fact that the administrator reached a conclusion contrary to the position plaintiff advocates does not render the decision arbitrary and capricious.

Upon reviewing the record, and considering the fact that the administrator is also the insurer, the court finds that the administrator's decision was supported by substantial evidence and is therefore neither arbitrary nor capricious.

## VII.  Conclusion

15

For the reasons set forth above, plaintiff's motion for summary judgment [Doc. No. 21] is denied. The administrator's denial decision is upheld.

ENTERED this 3rd day of February, 2009.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma